Jeffrey Lewis (SBN 66587)
jlewis@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel.: (510) 463-3900

*Additional counsel listed on signature page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ALAN ZWEBEN and JESSICA KLINE, on behalf of themselves, the Prospect Medical Retirement Savings Plan A, and all persons similarly situated,

Plaintiffs,

v.

PROSPECT MEDICAL HOLDINGS, INC., a Delaware corporation; BLACK COMPANIES I-X; and JOHN DOES I-X,

Defendants.

No. 2:26-cv-06548-HDV-SSC

**PLAINTIFFS' RESPONSE TO DEFENDANT PROSPECT MEDICAL HOLDINGS, INC.'S MOTION TO DISMISS**

Date: November 19, 2026
Time: 10:00 AM PT
Judge: Hon. Hernán D. Vera
Courtroom: 5B, Fifth Floor

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. LEGAL STANDARD ........................................ 4

IV. ARGUMENT ........................................ 4

A. Plaintiff Has Stated a Claim for Defendant's Breach of Its Fiduciary Obligation to Collect and Deposit Employer Matching Contributions. ........................................ 5

1. Defendant Serves in Multiple Roles as a Fiduciary of the Plan. 5

2. The "Two-Hats" Doctrine Does Not Provide a Basis for Dismissal. 7

3. Count Two Properly Alleges that Defendant Has and Breached the Fiduciary Duty of Prudence to Collect and Deposit Employer Matching Contributions to the Plan 7

B. Plaintiff Has Alleged Facts Sufficient to State a Plausible Claim That Unpaid Matching Contributions Are Assets of the 401(K) Plan. ........................................ 11

1. The Ninth Circuit Approach to the Character of Unpaid Contributions is Subject to an Exception For Unpaid Contributions Required by the Plan. 11

2. Defendant's Failure to Make Employer Matching Contributions When Due Falls Within the Exception. 12

3. Defendant's Authorities are Not on Point. 13

C. Counts One Through Four State Fiduciary Breach Claims ................14

D. Count Five States a Claim for Co-Fiduciary Liability Against Parties Who Have Yet to Be Identified, and Plaintiffs Should Be Given an Opportunity to Conduct Discovery to Identify the Doe Defendants Whose Co-Fiduciary Liability is Alleged. ...............17

V. CONCLUSION ..........................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*Barboza v. California Ass'n of Pro. Firefighters*,
799 F.3d 1257 (9th Cir. 2015) .......... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 5

*Bos v. Bd. of Trs.*,
795 F.3d 1006 (9th Cir. 2015) .......... 11, 12, 13, 14

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*,
779 F.3d 182 (2d Cir. 2015) .......... 11

*Carpenters Pension Tr. Fund for N. California v. Moxley*,
734 F.3d 864 (9th Cir. 2013) .......... 11, 12

*Castaneda v. Baldan*,
961 F. Supp. 1350 (S.D. Cal. 1997) .......... 15

*Central States Pension Fund v. Central Transp., Inc.*,
472 U.S. 559 (1985) .......... 8, 9

*Chao v. Johnson*,
No. Civ. A. H-03-5394, 2005 WL 2095109 (S.D. Tex. Aug. 30, 2005) 14, 15, 16, 17

*Cline v. Indus. Maint. Eng'g & Cont. Co.*,
200 F.3d 1223 (9th Cir. 2000) .......... 11, 13, 14

*Collins v. Pension and Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Assocs.*,
144 F.3d 1279 (9th Cir. 1998) .......... 8, 9, 15

*Donovan v. Bierwirth*,
680 F.2d 263 (2nd Cir. 1982) .......... 6, 10

*Glazing Health and Welfare Fund v. Lamek*,
896 F.3d 908 (9th Cir. 2018) .......... 12, 13, 14

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) .......... 4

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) .......... 7

*ITPE Pension Fund v. Hall*,
334 F.3d 1011 (11th Cir. 2003) .......... 11

*Jacob v. RTX Corporation*,
817 F.Supp. 3d 341 (E.D. Va. 2026) .......... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 4, 13

*Liss v. Smith*,
991 F. Supp. 278 (S.D.N.Y. 1998) .......... 16

*LoPresti v. Terwilliger*,
126 F.3d 34 (2nd Cir. 1997) .......... 16

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022), *cert. den'd*, 215 L.Ed. 2d 670 .......... 13

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......... 5

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) .......... 7

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) .......... 16

**Federal Statutes**

11 U.S.C. § 523(a)(4) .......... 12

29 U.S.C. § 1002(21)(A) .......... 6

29 U.S.C. §1104(a)(1) .......... 6, 14

29 U.S.C. § 1104(a)(1)(A) .......... 3, 15

29 U.S.C. § 1104(a)(1)(B) .......... 4, 15

29 U.S.C. § 1104(a)(1)(D) .......... 6

29 U.S.C. §1106(a)(1)(D) .......... 4, 16

29 U.S.C. § 1106(b) .......... 4, 16

29 U.S.C. § 1106(b)(1) .......... 17

29 U.S.C. § 1106(b)(2) .......... 17

**Rules**

Fed. R. Civ. P. 12 .......... 1, 4, 5

## I. INTRODUCTION

When Defendant Prospect Medical Holdings, Inc. ("Prospect Medical" or "Defendant") and numerous affiliated entities filed their jointly administered bankruptcy cases on January 11, 2025, Prospect Medical was three years delinquent in its obligations to collect and deposit annual matching contributions to the accounts of Plaintiffs and other employee participants in the Prospect Medical Retirement Savings Plan A (the "401(k) Plan" or the "Plan"). Complaint, ECF 1, at ¶¶ 13, 49, 50, 51.[1] There is no dispute that Defendant was three years and tens of millions of dollars behind in those obligations because Defendant expressly so declared under penalty of perjury in filings with the bankruptcy court. *Id.* ¶ 51.

In the face of this admitted default, and with the permission of the bankruptcy court pursuant to a stipulation with Prospect Medical as the Chapter 11 Debtor, Plaintiffs brought this case to satisfy their claims exclusively from the proceeds of fiduciary liability insurance policies that expressly protect the Savings Plan and its participants from the consequences of fiduciary breaches by the Plans' fiduciaries. *Id.* ¶¶ 12, 17. In its Motion to Dismiss Plaintiffs' Class Action Complaint ("Motion" or "Mot." ECF No. 25), Defendant now contends that, even though it is the Sponsor, the Employer, the Plan Administrator, and the Plan Fiduciary of the 401(k) Plan, with authority to control and manage the operation and administration of the Plan (Complt. ¶ 25; Exhs. B–E at pp. 1–3), it owed no *fiduciary* obligation with respect to the missing employer matching funds

[1] Copies of the Prospect Medical Retirement Savings Plan A, including the Adoption Agreement Nonstandard-Plus ("Adoption Agreement") effective as of July 1, 2022, and subsequent amended Adoption Agreements effective as of January 1, 2023, July 1, 2023, and January 15, 2024, were submitted by Defendant as attachments A through E to the Declaration of Patrick C. DiCarlo, ECF No. 25-2. As the Plan is referenced in the Complaint, Plaintiffs, without conceding that these documents constitute the entirety of the Plan, do not object to the use of these exhibits in connection with Defendant's Rule 12(b)(6) motion, and will refer to them herein as "Exh. __."

until the funds had been actually deposited to the 401(k) Plan. Mot. 5–6. To the contrary, Defendant's failure to take action to collect those matching funds is itself a breach of fiduciary duty entitling Plaintiffs to relief, and even under Defendant's narrow view of ERISA fiduciary duty, the cause of action to pursue payment of those three missing years of matching funds is a Plan asset squarely within the purview of Defendant's fiduciary responsibility.

## II. BACKGROUND

Defendant Prospect Medical is a Delaware corporation with its principal place of business in Los Angeles, California, and at all relevant times was the Sponsor, Plan Administrator and Named Fiduciary of the 401(k) Plan, with authority to control and manage its operation and administration. Complt. ¶ 25; *see also* Plan, Exh. A, at 14 (definitions of "Named Fiduciary" and "Named Fiduciary for Contributions") *and* Adoption Agreements, Def. Exhs. B–E at Item G (appointing Defendant as Named Fiduciary); Exh. A at 16 (definition of "Plan Administrator") *and* Exhs. B–E at Item H (appointing Defendant as Plan Administrator); Exh A at 92, § 9.01 (responsibilities of Plan Administrator and of Named Fiduciary for Contributions). Defendant exercised discretionary authority and control respecting the management and administration of the 401(k) Plan. Complt. ¶ 25; Plan, Exh. A at 92, § 9.01 (Plan Administrator has "complete control of the administration of the Plan").

Plaintiffs are two former employees of Crozer Health, which was a subsidiary of Defendant, and are participants in the 401(k) Plan who made voluntary contributions to their accounts through deductions from their earnings during Plan years 2022, 2023, and 2024. Complt. ¶¶ 20, 21. During that time, Plaintiffs became entitled to receive additional contributions to their accounts from Defendant in an amount, up to a maximum percentage of their annual compensation, matching their own contributions (the "Employer Matching Contributions"). Complt. ¶ 3; Defendant's Exhs. B–E at Items P(6) and (7).

For Plan years 2022, 2023 and 2024, those Employer Matching Contributions were owed but not made as Defendant slid into bankruptcy. Compl. ¶¶ 7, 52. Defendant filed for bankruptcy protection in early 2025. Complt. ¶ 13. *In those bankruptcy proceedings, Defendant affirmatively admitted under penalty of perjury that, due to Defendant's liquidity shortfalls, Employer Matching Contributions had been "drastically underfunded in recent years," and that it owed nearly $48 million in Employer Matching Contributions, which included at least $18.7 million of Employer Matching Contributions to the 401(k) Plan.* Complt. ¶¶ 7, 8, 51 and n.2. Because Defendant had insufficient assets in the bankruptcy to fund the missing Employer Matching Contributions, Plaintiffs were given permission by the bankruptcy court, in return for waiving their priority claims, to proceed with this claim, with collection limited to the proceeds of Defendant's fiduciary liability insurance. Complt. ¶ 17.

Plaintiffs assert that Defendant had a fiduciary duty to collect the Employer Matching Contributions and deposit them to the Plan for allocation to the accounts of Plan participants, including Plaintiffs. Complt. ¶ 6. The Plan expressly provides that Defendant is the "Named Fiduciary for Contributions," a position that has

> …sole and exclusive responsibility for (i) collecting all Contributions, including the determination of the amount of Contributions required to be made under the Plan, (ii) monitoring and ensuring that Contributions are timely made to the Plan, and (iii) enforcing the Plan's legal claims for Contributions….

Plan, Exh A at 92, § 9.01.[2]

Plaintiffs assert that Defendant's failure to collect and deposit the Employer Matching Contributions over a period of three years, as well as allowing those uncollected funds to inure to the benefit of Defendant, its subsidiaries and affiliates, were breaches of the duty of loyalty under ERISA §404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)

[2] "Contributions," Exh. A at 7, includes "Employer Contributions," *id.* at 9, which in turn includes "Matching Contributions, *id.* at 14.

(Complt. Count One) and the duty of prudence under ERISA §404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) (Complt. Count Two); are prohibited transfers to a party in interest under ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D) (Complt. Count Three); and constitute prohibited self-dealing in Plan assets for Defendant's own interest under ERISA § 406(b), 29 U.S.C. § 1106(b) (Complt. Count Four).[3] It is against this landscape that Defendant seeks to dismiss the Complaint in its entirety by denying the very existence of its fiduciary responsibility.

## III. LEGAL STANDARD

To state a claim sufficient to defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint need only allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007); probability is not required, *id.* at 556. In making that determination, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). The court does not resolve issues of fact at the pleading stage, and if defendant incorporates a document in its motion, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1003 (9th Cir. 2018).

## IV. ARGUMENT

Defendant contends that it cannot have any fiduciary duty with respect to the unpaid Employer Matching Contributions it is charged with collecting and depositing until after they have been deposited in the Plan. Mot. 5. Defendant is simply wrong; not only are those Employer Matching Contributions properly treated as Plan assets under the facts pled here, but the identification of the missing funds as plan assets is not the sole

[3] Plaintiffs also assert claims for co-fiduciary liability involving as-yet unidentified defendants (Complt. Count Five).

source of Defendant's fiduciary obligations. Neither ERISA nor Plaintiffs' Complaint is so limited. Defendant has the express obligation under the Plan to collect and deposit Employer Matching Contributions, but Defendant took no enforcement action whatsoever for at least three years while, as admitted by Defendant under penalty of perjury, the match was outstanding and owed. Further, whether or not undeposited Employer Matching Contributions are Plan assets under Ninth Circuit law, the cause of action to collect those funds undeniably belongs to the Plan, and triggers Defendant's fiduciary obligations.

### A. Plaintiff Has Stated a Claim for Defendant's Breach of Its Fiduciary Obligation to Collect and Deposit Employer Matching Contributions.

#### 1. Defendant Serves in Multiple Roles as a Fiduciary of the Plan.

Defendant at all relevant times has been a fiduciary of the 401(k) Plan. Complt. ¶ 25. Plaintiffs acknowledge, of course, that there are circumstances under which a plan fiduciary may not be acting in its fiduciary capacity, *e.g. Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("threshold question" is whether defendant was "acting as a fiduciary …when taking the action subject to complaint"), but that determination is a question of fact outside the scope of a Rule 12 motion. At this stage, Plaintiffs have pled facts stating claims based on Defendant's fiduciary status and failures to act that are plausible on their face. *Twombly*, 550 U.S. 555.

As an initial matter, Plaintiffs' allegations are further buttressed by the exhibits attached by Defendant to its Motion. Defendant is identified as a fiduciary many times over. The Plan document, and all versions of the Adoption Agreement in effect during the relevant time period, name Defendant as the Employer, Plan Administrator, Named Fiduciary, and Named Fiduciary for Contributions. 401(K) Plan, Exh. A, at 14 (definitions of "Named Fiduciary" and "Named Fiduciary for Contributions") *and* Adoption Agreements, Def. Exhs. B–E at Item G (appointing Defendant as Named Fiduciary); Exh. A at 16 (definition of "Plan Administrator") *and* Exhs. B–E at Item H

(appointing Defendant as Plan Administrator); Exh A at 92, § 9.01 (responsibilities of Plan Administrator and of Named Fiduciary for Contributions). The Plan Administrator is given "complete control of the administration of the Plan," with all necessary powers and "complete discretion to construe or interpret the provisions of the Plan…" Plan, Exh. A, at 92, § 9.01. The Named Fiduciary has "authority to control and manage the operation and administration of the Plan," *id.* at 14, which it exercised by, among other things, determining not to make or collect Employer Matching Contributions for 2022 through 2024. Complt. ¶¶ 7, 53.

These grants of discretionary authority and control are exactly the kind of duties that give rise to fiduciary obligations under ERISA:

> … a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan….

ERISA §3(21)(A), 29 U.S.C. § 1002(21)(A). In fulfilling these fiduciary roles, Defendant is required to follow the obligations the Plan has imposed on it, that is, to act "in accordance with the documents and instruments governing the plan." ERISA § 404(A)(1)(D), 29 U.S.C. § 1104(a)(1)(D). And ERISA expressly imposes on fiduciaries a duty of loyalty to exercise their discretion "solely in the interest of the participants and beneficiaries," ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), and "with an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2nd Cir. 1982).

In light of the foregoing, as we elaborate below, the facts alleged in the Complaint plausibly establish the existence and breach of Defendant's fiduciary duties.

**2. The "Two-Hats" Doctrine Does Not Provide a Basis for Dismissal.**

Defendant contends that it was wearing its "business" hat, and thus was not acting as a fiduciary, when it chose to use funds for Defendant's benefit rather than make the Employer Matching Contributions. Mot. at 8–9. The "two-hat" doctrine asks whether the defendant "was acting as a fiduciary (that is, was *performing a fiduciary function*) when taking the action subject to complaint." *Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018) (emphasis in original). That inquiry is fact-intensive. Adopting a plan term may be a settlor act, but a fiduciary's *implementation* of plan terms—exercising discretion and control over plan assets—reflects "decisions of Plan administration rather than Plan design" and is subject to fiduciary duties. *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 861 (N.D. Cal. 2024) (inclusion in plan of options for how to apply forfeited funds is settlor function; selecting which option to apply is fiduciary function); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) (defendant's contention that decision to offset matching contributions with forfeitures was non-fiduciary settlor function lacks merit).

Plaintiffs do not challenge Defendant's design of the Plan; they challenge its failure to collect and its diversion of amounts it was obligated to transfer to the Plan—conduct going to the handling of plan assets and the administration of the Plan. Compl. ¶¶ 51–53.

**3. Count Two Properly Alleges that Defendant Has and Breached the Fiduciary Duty of Prudence to Collect and Deposit Employer Matching Contributions to the Plan**

Defendant contends that Plaintiffs have not sufficiently alleged facts to establish that Defendant had a fiduciary duty to collect and deposit Employer Matching Contributions to which Plaintiffs are entitled. Mot. 11. The Supreme Court has made that fiduciary duty abundantly clear: "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used

on behalf of participants and beneficiaries….” *Central States Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 571 (1985). Here Plaintiffs have alleged that

(1) Defendant was required to make Employer Matching Contributions every year (Compl. ¶ 49);

(2) Defendant had a fiduciary obligation to collect and deposit those contributions to the Plan (Compl. ¶50); and

(3) Defendant admitted under penalty of perjury that for *three years* it failed to fund those contributions to the tune of nearly $48 million (*id.* ¶ 51–52).

Furthermore, the Plan expressly appoints the Plan Administrator—Defendant—as the “Named Fiduciary *for Contributions*” (emphasis added), with the “sole and exclusive responsibility” for determining the amount of contributions to the Plan, collecting them, ensuring they are timely made, and enforcing the Plan’s legal claims for them. Plan, Exh. A, at 92, § 9.01.

Defendant relies on *Collins v. Pension and Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Assocs*., 144 F.3d 1279 (9th Cir. 1998), to support its contention that no fiduciary duty arose because, under its reading of the 401(K) Plan, Plaintiffs here had no “entitlement” to unpaid employer contributions. Mot. 11. Defendant’s view of the Plan’s meaning at most asserts a contention that the Court cannot determine in its favor on a motion to dismiss. Defendant misreads *Collins*, misunderstands the allegations of the Complaint, and misinterprets the terms of the 401(K) Plan.

In fact, *Collins* confirmed the existence of a fiduciary duty to collect employer contributions, which duty continued even after the expiration of a collective bargaining agreement. The Ninth Circuit found that there had been no *violation* of the applicable fiduciary duty where, under the circumstances in that case, partial payments had been accepted. *Id.*, 144 F.3d 1283–1284. *Collins* explains that a plan trustee has the “general duty to ensure a plan receives all funds to which it is entitled,” that the trustee “*must* take

action against employers who fail to contribute to a fund as required by a plan," and that "beneficiaries may sue a fiduciary who fails to collect delinquent contributions." *Id.* (emphasis supplied). And *Collins* relies on *Central States*, which could not be clearer about Defendant's fiduciary duty to "ensure that a plan receives all funds to which it is entitled." *Central States.*, 472 U.S. at 571.

*Collins* was decided in the context of summary judgment. All this Court need determine on a motion to dismiss is that adequate facts have been pled, as they have been. Defendant asserts that there was no "entitlement" to Employer Matching Contributions, Mot. 11, and points to language in the Adoption Agreements providing that Defendant "*may* make *discretionary* Matching Contributions" (emphasis by Defendant) annually in an amount it determines, Mot. 3. But of course, once Defendant *made* that determination every year, the Employer Matching Contribution *was no longer discretionary*. Defendant simply ignores the substance of the allegations of the Complaint, which quotes Defendant's own words from a January, 2025 declaration under penalty of perjury in its bankruptcy proceeding:

> …[Defendant] also matches a percentage of an employee's contribution to the 401(k) Savings Plan. However, due to the Company's recent liquidity shortfalls, said match has been drastically underfunded in recent years, and the Debtors estimate they owe nearly $48 million with respect to the 401(k) Savings Plan. Said failure to fund the 401(K) match is considered an ERISA violation….

Compl. ¶ 51.

If Defendant had had no obligation to pay nearly fifty million dollars in outstanding Employer Matching Contributions when it filed bankruptcy, it could not have affirmatively asserted that undisputed obligation—under penalty of perjury—in the bankruptcy court. Defendant's admission necessarily establishes that it declared such an employer match in each of the affected years, and then failed to collect and deposit it.

Defendant also contends that the Complaint lacks plausible allegations showing that Defendant "failed to engage in a prudent process as to how to handle collection," citing to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Mot. 11. Under *Ashcroft*,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.* at 678 (citations omitted).

The Complaint is entirely consistent with *Ashcroft*; it plausibly alleges far more than a "sheer possibility" of a fiduciary breach. From the allegations discussed above, the Court can fairly draw the reasonable inference that Defendant's "collection process" involved doing nothing for three years except dig itself deeper into a hole by voluntarily obligating itself to pay more Employer Matching Contributions each successive year, never fund them, and then file bankruptcy. The Court can certainly draw the reasonable inference that, for three years, Defendant (as fiduciary) strung Plaintiffs along (as participants) with promises of benefits it had no way of providing. And there is no evidence to suggest that in its fiduciary capacity, Defendant even considered or discussed taking any action or, whether because of the conflict between its Sponsor interest and its fiduciary interest, Defendant sought independent outside advice or considered retaining an independent fiduciary on behalf of the Plan. *See Donovan*, 680 F.2d at 272 (trustees failed to solicit advice of independent counsel in situation that "was, and should have been perceived to be, an unusual situation peculiarly requiring legal advice from someone above the battle.").

Count Two's allegation that "[a] prudent person acting in a fiduciary capacity in similar circumstances would promptly collect and deposit all Employer Matching Contributions to the Savings Plan in a timely manner" (Compl. ¶ 75) plausibly flows from the facts alleged and cannot be dismissed.

**B. Plaintiff Has Alleged Facts Sufficient to State a Plausible Claim That Unpaid Matching Contributions Are Assets of the 401(K) Plan.**

The balance of Defendant's Motion relies primarily on the mistaken argument that no fiduciary duty can arise under Ninth Circuit law with respect to the uncollected Employer Matching Contributions alleged here before they have actually been deposited in the Plan. E.g., Mot. at 5. First, as explained above, Plaintiffs' claims do not depend on whether the unpaid contributions became Plan assets. Moreover, Defendant's argument ignores the allegations of the Complaint that place Plaintiffs' claim within an exception to the Ninth Circuit rule regarding plan assets.

**1. The Ninth Circuit Approach to the Character of Unpaid Contributions is Subject to an Exception For Unpaid Contributions Required by the Plan.**

Defendant relies on Ninth Circuit cases stating generally that "[u]ntil the employer pays the employer contributions over to the plan, the contributions do not become plan assets." *E.g., Carpenters Pension Tr. Fund for N. California v. Moxley*, 734 F.3d 864, 867 (9th Cir. 2013); *Cline v. Indus. Maint. Eng'g & Cont. Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000), But in *Carpenters* the Ninth Circuit expressly noted the "persuasive" argument for an exception that "unpaid contributions required by the Agreement can be considered plan assets." *Id.*, 734 F.3d at 867–869. And *Cline* only addressed the status of unpaid contributions in *dicta*, without considering the exception, as the *Cline* court had already determined that there was no evidence of any unpaid contributions. 200 F.3d at 1234.

As discussed in *Bos v. Bd. of Trs.*, 795 F.3d 1006, 1010 (9th Cir. 2015), the same principle has been established outside the Ninth Circuit. *See e.g., ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003) (unpaid contributions can be plan assets when governing documents make "receivable property" a plan asset as soon as it became due); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton*

*Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (defendant was fiduciary when he failed to remit employer contributions under his control, which contributions were designated as plan assets under the trust documents). While *Bos* does not adopt the exception, *Bos* made clear that its decision was based on the fact that the employer had no authority over management of the plan. *Bos*, 795 F.3d at 1011.[4] Defendant cites *Glazing Health and Welfare Fund v. Lamek*, 896 F.3d 908, 911-912 (9th Cir. 2018), for the proposition that *Bos* forecloses the exception under Ninth Circuit law, but just as in *Bos*, the defendants in *Glazing Health* did *not* also hold fiduciary roles such as Defendant does here.[5] The exception referred to in *Carpenters* is not foreclosed by the cases Defendant cites under the facts of this case, and as we explain below, Plaintiffs have pled facts establishing a plausible claim under that exception.

**2. Defendant's Failure to Make Employer Matching Contributions When Due Falls Within the Exception.**

Defendant asserts that "[t]he Complaint does not include any factual allegations that the Savings Plan terms define plan assets or make matching contributions mandatory." Mot. 6 n.4. On the contrary, the Complaint alleges that, "[u]nder the terms of the Savings Plan," participants "were and are entitled to receive" the matching funds (Complt. ¶ 3); that Defendant "was required to make Employer Matching Contributions" (Complt. ¶ 49); and that it "had a fiduciary obligation to collect Employer Matching

[4] *Bos* involved whether, under section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4), an employer who failed to make a required contribution was guilty of defalcation while acting in a fiduciary capacity; ultimately it determined that since the employer (unlike other parties who *did* have fiduciary duties) was not already fulfilling a fiduciary role, he could not be held liable as a fiduciary when the very act complained of created the only basis for treating him as a fiduciary under § 523(a)(4). *Bos*, 795 F.3d at 1012.

[5] Further, as the dissent in *Glazing Health* eloquently explains, the majority badly misreads *Bos*, which "expressly did not decide whether, outside of a bankruptcy context, contracting parties to an ERISA plan may designate unpaid employer contributions as plan assets." 896 F.3d at 912 (Gleason, J., dissenting).

Contributions and deposit" them to participants' accounts "dollar for dollar up to a specified percentage." Compl. ¶ 6. Defendant, by virtue of its status as Sponsor, Employer, Plan Administrator, Named Fiduciary, and Named Contributions Fiduciary (*see* § II, above) not only had the obligation to make the Employer Matching Contributions, but was at all times in control of its funds and the management of the Plan, including the duty to collect the contributions. This is far from the facts in *Bos*, 795 F.3d at 1011 (declining to apply exception where, unlike in the present case, employer had no authority over the plan) or *Glazing Health*, 896 F.3d at 912 (where trustees sued employer's owners).

Defendant's argument that the Employer Matching Contributions were discretionary rests on its interpretation of the language of the Plan and Adoption Agreements Defendanthas incorporated into the record in support of its Motion. Mot. 3. Plaintiffs have pled that they were not discretionary; as demonstrated by Defendant's declaration in its bankruptcy proceeding, Defendant acknowledged that Employer Matching Contributions were **obligations** Defendant had defaulted on. *See* Compl. ¶¶ 8, 51. A court may consider a plan document referenced in a complaint, but it may not "accept truth of the plan's contents where the parties disputed" how the plan operated. *Khoja*, 899 F.3d at 1003.[6] At most, Defendant has raised a dispute over the Plan's terms, which is a classic fact issue for determination through litigation.

**3. Defendant's Authorities are Not on Point.**

Defendant cites *Cline*, *Bos*, and *Glazing Health* in opposition to application of the exception. *Bos* primarily involves not ERISA but the bankruptcy issue of whether a claim can be discharged. *Glazing Health* and *Bos* clearly involved contributions to plans by employers who had no control over the collection of assets owing to the Plan. *Glazing*

[6] Defendant's citation to *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022), *cert. den'd*, 215 L.Ed. 2d 670, is unavailing, as Plaintiffs' *factual* allegations cannot be contradicted by Defendant's *interpretation* of an incorporated document.

*Health*, 896 F.3d at 909, 912 (claim brought by plan's trust against employer's owners); *Bos*, 795 F.3d at 1008 (claim brought by plan trust's board of trustees against employer's owners). The dictum in *Cline* arose in a case that involved multiple fiduciaries with various unspecified roles. 200 F.3d 1223, 1227-1228. The Ninth Circuit's reasoning relied on the relationship of the employer to the plan, *e.g.*, *Bos*, 795 F.3d at 1011–1012 (*employer* did not have "sufficient control over a plan asset to make it a fiduciary," because "the designated fund administrator has the authority to enforce the contractual right.") Here, by contrast, Defendant is the Sponsor, Employer, designated Plan Administrator, Named Fiduciary, and Named Contributions Fiduciary. *See* § II, above. Plaintiffs allege that Defendant controls both the funds and the collection function. Compl. ¶ 6.

While *Glazing Health* held that treating unpaid contributions as plan assets does not, standing alone, make an employer a fiduciary, it did not address an entity that is already the plan's named fiduciary and administrator with control over funding. At a minimum, whether the Plan's governing documents bring the match within the exception is a merits question that cannot be resolved against Plaintiffs on a motion to dismiss.[7]

**C. Counts One Through Four State Fiduciary Breach Claims**

**Loyalty (Count One)**. ERISA requires a fiduciary to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1); *Chao v. Johnson*, No. Civ. A. H-03-5394, 2005 WL 2095109 at *4 (S.D. Tex. Aug. 30, 2005). Using plan assets to benefit the employer violates that duty: "[d]eliberately favoring the corporate treasury" when administering a plan is inconsistent with the duty of loyalty, and withdrawing plan assets "to pay employer's operating expenses" breaches

[7] And, as argued above, Defendant's fiduciary obligation to collect the unpaid contributions existed here regardless of whether the unpaid contributions were plan assets. *See* Section IV(A), above.

§ 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). *Chao,* 2005 WL 2095109 at *5. The Complaint alleges precisely that—Defendant allowed the matching contributions "to be used to pay Prospect Medical's operating expenses" and chose to have "Savings Plan assets to inure to the direct benefit of" itself and its affiliates. Compl. ¶¶ 68, 70. Permitting plan assets to remain in corporate accounts and be spent on company expenses "inured those Plan assets to the benefit of" the employer. *Chao,* 2005 WL 2095109 at *8. Defendant's reliance on *Jacob v. RTX Corporation*, 817 F.Supp. 3d 341, 351 (E.D. Va. 2026) for its proposition that violation of the anti-inurement statute "*usually* require[s] reversion or diversion of plan assets back to the sponsor" (emphasis supplied), Mot. 10, is misplaced. *Jacob*'s premise is that no plan assets are involved, whereas Plaintiffs allege that the Employer Matching Contributions are plan assets. The Complaint alleges that Employer Matching Contributions "required to be deposited to the Savings Plan" were withheld and used by Defendant to fund its operating and other expenses. Compl. ¶¶ 51, 53.

**Prudence (Count II).** A fiduciary must act with the "care, skill, prudence, and diligence" of a prudent person in like circumstances. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). A prudent fiduciary makes "reasonable collection efforts under the circumstances." *Collins*, 144 F.3d at 1283–1284. Whether Defendant met that standard—including whether it undertook any process to collect or deposit the match before spending the funds on its business—is a question of fact not determinable in the context of Defendant's motion. *Castaneda v. Baldan*, 961 F. Supp. 1350, 1352 (S.D. Cal. 1997) (preserving for trial issue of reasonableness of Defendant's failure to take action to collect delinquent contributions). Defendant's contention that Plaintiffs lack an "entitlement" to the contributions is addressed above and is adequately pled (*see* § IV(A)(3) above). The Complaint alleges both entitlement to Employer Matching Contributions and that they are required to be contributed. Compl. ¶¶ 49–52.

**Prohibited Transactions Under Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) (Count Three).** An ERISA §406(a)(1)(D) claim requires "(1) a transfer (2) to a party in interest (3) of plan assets." *Liss v. Smith*, 991 F. Supp. 278, 293 (S.D.N.Y. 1998). Defendant is a party in interest in its multiple roles as employer, sponsor, plan administrator, and named fiduciary. *See* § II, above. And courts have held that maintaining plan assets in the employer's corporate accounts and using those funds to pay operating expenses constitutes "direct transfers of the Plans' assets for the benefit of a party in interest" under § 406(a)(1)(D). *Chao*, 2005 WL 2095109, at *6; *see LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir. 1997) (determining defendant breached fiduciary duty when, after employer was obligated to make contributions to plan, defendant directed payment to creditors from corporate account). Defendant's argument that there was no "transaction"—only a failure to act—misreads the Complaint. Plaintiffs do not allege the absence of a transaction; they allege that Defendant affirmatively "retained the funds for itself and used them to pay the operating expenses" of Defendant and its affiliates. Compl. ¶83. The employer's obligation to contribute "constitutes a transaction involving Fund assets." *Liss v. Smith*, 991 F. Supp. 278, 291 (S.D.N.Y. 1998), Defendant *used* plan assets to pay bills or otherwise fund its business operations. Defendant relies on *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100–1101 (9th Cir. 2004) to support its position (Mot. 12–13), but in *Wright* plaintiff "pointed to nothing akin to a "sale, exchange, or leasing of property, … [or] the lending of money or extension of credit," *id.* at 1101. Plaintiffs have pled that Defendant here actively used plan assets for its benefit, Compl. ¶ 83, in essence extending itself credit with plan assets.

**Self-Dealing Under ERISA § 406(b), 29 U.S.C. § 1106(b) (Count Four).** Section 406(b) bars a fiduciary from "deal[ing] with the assets of the plan in his own interest" and from acting in a transaction on behalf of a party "whose interests are adverse" to the plan. *Barboza v. California Ass'n of Pro. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015). A

fiduciary that pays its own expenses from plan assets commits a "per se violation" of § 406(b)(1), 29 U.S.C. § 1106(b)(1). *Id.* On facts materially similar to these, a court held that using unremitted contributions to pay operating expenses meant the fiduciary "dealt with the Plans' assets in his own interest," and that "[d]efendant's payment of corporate debts from accounts containing unremitted employee contributions directly conflicted with the interests of the contributing [] employees," which placed the fiduciary "on both sides of the transaction" with adverse interests under § 406(b)(2), 29 U.S.C. § 1106(b)(2). *Chao,* 2005 WL 2095109, at *7. Defendant's objection that Plaintiffs identify no "adverse party" is answered by its own admitted conduct: it benefited itself and its affiliates at the Plan's expense. Compl. ¶ 89.

### D. Count Five States a Claim for Co-Fiduciary Liability Against Parties Who Have Yet to Be Identified, and Plaintiffs Should Be Given an Opportunity to Conduct Discovery to Identify the Doe Defendants Whose Co-Fiduciary Liability is Alleged.

Count Five of the Complaint asserts a cause of action against fictitiously-named fiduciary defendants that Plaintiffs believe will have co-fiduciary liability with Defendant, or whose direct fiduciary liability is attributable to Defendant as a co-fiduciary. Compl. ¶¶ 92–96. Plaintiffs expressly alleged at Complaint ¶¶ 26–27 the roles these Doe defendants play and that their names will be substituted in the Complaint once identified—a process that Plaintiffs anticipate will require discovery from Defendant and analysis of the effect, if any, that the releases in Defendant's confirmed Plan of Reorganization may have on the Doe defendants' amenability to suit.[8] Plaintiffs request that the Court decline to dismiss Count Five at this time and allow them to promptly proceed with such discovery and analysis, or in the alternative, that the Court

[8] Plaintiffs are aware that this Court's 6/30/25 Civil Standing Order, ECF 10, provides for Doe defendants to be dismissed if not served within 90 days, *id.*, p.2, §1, but for the reasons stated above propose that, in the interests of efficiency, the Court provide a reasonable opportunity for discovery.

dismiss Count Five without prejudice to a subsequent motion to amend the Complaint to name the Doe defendants once they have been determined.

**Leave to Amend**

To the extent, if any, the Court determines to grant Defendant's motion, Plaintiffs request that the Court do so without prejudice, and grant them leave to amend their complaint to cure any pleading deficiency.

## V. CONCLUSION

For the foregoing, Plaintiffs request that the Court deny Defendant's motion to dismiss; in the alternative, authorize them to amend their complaint to cure any deficiency identified by the Court; and grant them such other and further relief to which they may be entitled.

RESPECTFULLY SUBMITTED this 22nd day of October, 2026.

KELLER ROHRBACK L.L.P.

By */s/ Jeffrey Lewis*
Jeffrey Lewis (SBN 66587)
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel. (510) 463-3900
jlewis@kellerrohrback.com

By */s/ Alison E. Chase*
Alison E. Chase (SBN 226976)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel. (805) 456-1496
achase@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Gary A. Gotto (*pro hac vice*)
Christopher Graver (*pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012

Tel. (602) 248-0088
ggotto@kellerrohrback.com
cgraver@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Erin M. Riley (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel. (206) 623-1900
eriley@kellerrohrback.com

Attorneys for Plaintiffs

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that (1) this brief does not exceed twenty-five (25) pages, which complies with the Court's Civil Standing Order (ECF 10), dated June 30, 2026; and (2) this brief contains 5,766 words, which compliaes with the word limit of L.R. 11-6.1.

Dated: October 22, 2026

Jeffrey Lewis